IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **BRENDA K. SHOEMAKER**, ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO.** |
| ) | **7:11-CV-3469-KOB** |
| ) | |
| **MICHAEL J. ASTRUE**, ) | |
| **Commissioner of the Social**, ) | |
| **Security Administration** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

On February 20, 2008, the claimant, Brenda Kelley Shoemaker, completed an application for disability insurance benefits under Title II and Part A of Title XVIII of the Social Security Act. The claimant alleged disability commencing on February 4, 2008 because of arthritis, fibromyalgia, depression, neurological problems, lupus, thyroid problems, attention deficit hyperactivity disorder ("ADHD"), and obsessive-compulsive disorder ("OCD"). The Commissioner denied the claim, and the claimant filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), which the ALJ held on February 22, 2010. (R. 20). In a decision dated April 22, 2010, the ALJ found the claimant was not disabled as defined by the Social Security Act and thus, ineligible for disability insurance benefits. (R. 407). On July 27, 2011, the Appeals Council refused to grant review, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. ( R. 1). The claimant has

1

exhausted her administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1631(c)(3). For the reasons stated below, this court AFFIRMS the decision of the Commissioner.

## II. ISSUES PRESENTED

I.  Whether the ALJ erred by finding claimant's ADHD and OCD were not severe impairments.

II. Whether the ALJ erred by not considering the claimant's impairments in combination and the effect that these impairments would have on the claimant's ability to sustain gainful employment.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited. This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 401 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record that support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence that conflicts with the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986). The court must scrutinize the totality of the record "to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker v.*

*Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### IV. LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." To make this determination the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[1]

To establish disability, the claimant has the burden of proving the first three steps: namely that (1) she is not engaged in substantial gainful activity; (2) she has a severe impairment or combination of impairments; and (3) her impairment or impairments meet or exceed the criteria in the Listings found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant cannot prove that she has a listed impairment, she must prove alternatively that she is unable to perform his previous

---

[1] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) was a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. Unit A 1981).

work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). Once the claimant shows that she cannot perform her previous work, the burden shifts to the Commissioner "to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Jones v. Apfel*, 190 F.3d at 1228.

"Where a claimant has alleged several impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." *Jones v. Dep't of Health & Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991) (citing *Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir.1985)).  In *Jones*, the Court recognized that a statement by the ALJ that she considered all of the claimant's impairments in combination is sufficient to demonstrate that the ALJ considered the combined effect of the claimant's impairments. *Id.* (citing *Wheeler v. Heckler*, 784 F.2d 1073 (11th Cir.1986)).

## V. FACTS

The claimant, who was born in 1956, completed two years of junior college but never received a degree. (R. 25). Her past work experience includes employment as a mental health aide, secretary, bookkeeper, payroll clerk, and administrative clerk. (R. 25).

### *Physical Limitations*

On February 22, 2007, the claimant visited the UAB Medical West Bessemer Clinic with complaints of left hip, thigh, and buttock pain. (R. 182).  She was treated by Dr. William T. Edge, who made an appointment for the claimant with an anesthesiologist to receive a nerve block. *Id.*  The claimant continued going to the Bessemer Clinic to see Dr. Edge and Dr. Frank D. Miller for persistent athralgias and myalgias through February 25, 2008.  (R. 177). During that

time the claimant consistently complained of pain in her left hip, thigh, and back. The claimant received an epidural block for her hip and buttock pain and was injected in the hip and SI joint. She was prescribed Trazodone for her insomnia, Flexeril for her joint and muscle pain, and Dr. Miller gave her samples of Celebrex and Nexium. (R. 178-79). An August 7, 2007 X-ray of the claimant's hip and lumbosacaral spine showed osteoarthritis. (R. 180). On February 25, 2008, Dr. Miller referred the claimant to a rheumatologist because her MRI had some "nonspecific lesions" and she tested positive for Antinuclear Antibodies. (R. 177).

Dr. Maria Bennett, the claimant's primary physician, also intermittently treated the claimant from November 2007 to December 2009 for pain in her back, hip, thigh, and buttock and prescribed Lyrica to help with the claimant's pain. (R. 170).

On May 3, 2008, Dr. Ryan C. Aaron examined the claimant, and the claimant complained of pain in her lower back, buttock, and thigh. (R. 238). Dr. Aaron noted that the claimant said, "nothing alleviates this pain. All movement makes the pain worse." *Id.* However, Dr. Aaron also noted that the claimant had a full range of motion in the lumbar and cervical spine and that Lyrica helped the claimant with her pain. *Id.*

On November 10, 2009, Dr. Michael Arthur Moore examined the claimant, who complained of constant pain in her back and legs. (R. 323). Dr. Moore, however, noted that the claimant had a "good range of motion in both hips and knees" and did not have swelling in her joints. *Id.*

The claimant consistently complained of ringing in her right ear and dizziness throughout 2007 and 2008. The claimant's January 28, 2008 MRI of the brain showed lesions in the subcortical white matter and areas of small alteration. (R. 192). The claimant saw Dr. Clarence

Barr on February 12, 2008 because of her abnormal brain MRI and vertigo. (R. 185-89). Dr. Barr prescribed Lyrica for the claimant's pain in the left sciatica and found a few punctate areas of high signal on FLAIR imaging but otherwise noted the exam was "unremarkable." (R. 189). Dr. Barr order another brain scan because of the abnormal brain MRI and possible multiple sclerosis. (R. 305). The March 3, 2008 brain scan produced no evidence of abnormality. *Id.*

Although the claimant complained of shortness of breath, chest pain, heart palpitations, and fatigue, all cardiac testings and examinations were negative. (R. 344; 350). Dr. Moore did diagnose the claimant with Hypertension on November 10, 2009 but noted that it was under reasonable control. (R. 323). The claimant was also diagnosed as having hypothyroidism, but her symptoms are controlled with medications. (R. 344).

The claimant underwent shoulder surgery on January 13, 2010; she had an arthroscopy with subacromial decompression, labral and rotator cuff debridement on her right shoulder. (R. 358). Dr. James R. Andrews examined the claimant six weeks after the surgery and, while the claimant was suffering some pain, Dr. Andrews noted that she would gain range of motion and rotator cuff strength back as well as see a decrease in pain over time. *Id.*

*Mental Limitations*

The claimant had her first formal psychiatric evaluation by Dr. Maria D. Caparas on March 27, 2002, complaining that she believed she had ADHD. (R. 199). The claimant stated that she had trouble with concentration, finishing tasks, and focusing, and that her primary care physician diagnosed her with depression and prescribed Celexa. *Id.* Dr. Caparas concluded that the claimant was "exhibiting some symptoms and behaviors consistent with ADHD" and prescribed her Ritalin and targeted psychotherapy. (R. 201).

The claimant saw Dr. Caparas monthly, with few exceptions, from this initial meeting until January 7, 2005. (R. 221).  In the course of the claimant's treatment, Dr. Caparas also diagnosed the claimant with OCD due to her uncontrollable shopping urges. (R. 207).  The claimant experienced ups and downs in her therapy and overall responded well to the medicine prescribed by Dr. Caparas, including Ritalin, Celexa, Strattera, Concerta, Adderall, Focalin, Prozac, Zoloft, Lexapro, and Luvox. The next time the claimant saw Dr. Caparas after January 2005 was October 21, 2005. (R. 222). The claimant reported stopping her medications in March 2005 because she "kept thinking she [could] do it herself." *Id.*  Dr. Caparas prescribed Luvox and Focalin at that time. *Id.* The claimant then regularly saw Dr. Caparas with improvement until May 1, 2008. (R. 222-237).

On May 1, 2008, Dr. Caparas noted that the claimant was "no longer depressed and has recovered some from her physical problems." (R. 237).  The claimant also told Dr. Caparas that she had learned to accept her mental illness and that her irritability was resolved. *Id.* The claimant expressed frustration at her disorganization but did state that her shopping impulses were under control. *Id.* Dr. Caparas continued the claimant on Lexapro and reinstated the prescription for Adderall. *Id.* The claimant has not sought mental health treatment since her last appointment with Dr. Caparas in May of 2008.

On May 7, 2008, psychologist Dr. John Neville examined the claimant, who had been referred from the Division of Disability Determination. (R. 243). Dr. Neville agreed with Dr. Caparas' diagnoses of ADHD and OCD and noted that the claimant's speech was clear and coherent and that the claimant's mood was labile. (R. 245).  The claimant did not appear angry or anxious, was not restless, and did not have any tremors. *Id.* Dr. Neville also noted that the

claimant was alert and well oriented and that the claimant's judgment and insight were adequate. *Id.* Dr. Neville concluded that the claimant could function independently in every aspect except her finances because of her obsessive compulsive shopping urges. (R. 245). Dr. Neville also noted that the claimant's anxiety disorder may affect her ability to cope with work pressures, but that the claimant could respond appropriately to coworkers. *Id.*

## VI. DISCUSSION

A. <u>Whether the ALJ erred by finding claimant's ADHD and OCD were not severe impairments.</u>

The claimant argues that the ALJ committed reversible error by finding that her ADHD and OCD were not severe impairments. The ALJ did, however, find that claimant's hypertension, arthritis, fibromyalgia, and hypothyroidism were severe. (R. 412). Because the ALJ found that these physical impairments were severe, he continued on in the sequential analysis of the claimant's claim. The issue, therefore, is whether the ALJ's failure to classify the claimant's mental conditions as severe was not supported by substantial evidence, and if it was not, whether the ALJ's subsequent analysis of the claimant's claim was a clear error of law or also not supported by substantial evidence.

The Eleventh Circuit has ruled that when an ALJ concludes some of a claimant's impairments are not severe but continues on with the sequential analysis because some other impairments are serve, the error is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." *Burgin v. Comm'r of Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011)(citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)). In *Scharver v. Astrue*, the Court affirmed an ALJ's denial of benefits when the ALJ only

8

considered some of the claimant's impairments severe and went on in the sequential analysis to consider all impairments, severe or not, in determining the claimant was not disabled. *Scharver v. Astrue*, 2009 WL 4828253 (M.D. Fla. 2009). In *Scharver*, the ALJ determined that the claimant's bipolar disorder and depression were not severe, but that the claimant's physical impairments were severe. *Id.* at *3.

As another court noted, "In some instances, an ALJ's failure to identify a particular impairment as severe at step two may be harmless error." *Garcia v. Astrue,* 2012 WL 2586866, at *3 (M.D. Fla. 2012) (citing *Burgin,* 420 F. App'x at 903). A determination by an ALJ that one of a number of impairments is not severe is only reversible error "if the ALJ failed in subsequent steps of his analysis to fully account for functional limitations arising from that impairment." *Funderburk v. Astrue*, 2012 WL 904682 (M.D. Ala. 2012) (citing *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 824-25 (11th Cir. 2010)). *See also  Burgin*, 420 F. App'x at 903 ("Even assuming the ALJ erred when he concluded [the claimant's] edema, sleep apnea, and obesity were not severe impairments, that error was harmless because the ALJ considered all of his impairments in combination at later steps in the evaluation process."); *Delia v. Comm'r of Social Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011) ("Because the ALJ gave full consideration to the consequences of [the claimant's] mental impairments on his ability to work at later stages of the analysis, the error [in failing to identify the claimant's mental impairments as a severe disability] at step two was harmless and is not cause for reversal.").

In this case, the ALJ determined that the claimant's mental limitations were not severe but that her physical limitations were severe. In the residual functional capacity analysis, however, the ALJ considered the claimant's ADHD and OCD. She noted that the claimant had

9

problems with concentration and memory and that she is obsessed with collecting things but can "accomplish things on a good day." (R. 414). The ALJ also explicitly stated the she considered "*all* symptoms" in reaching her conclusion and that she considered "physical *and mental* demands" of the claimant's past potential work. (R. 414, 418) (emphasis added). Thus, the ALJ's determination that claimant's ADHD and OCD were not severe, regardless of whether it is accurate, is not reversible error.

2.  <u>Whether the ALJ erred by not considering the claimant's impairments in combination and the effect that these impairments would have on the claimant's ability to sustain gainful employment.</u>

The claimant argues that the ALJ's decision that the claimant's combined impairments did not prevent her from returning to her past relevant work is not supported by substantial evidence. The ALJ has a duty to consider *all* of the claimed the impairments in combination and determine whether those combined impairments render the claimant disabled. *See Jones*, 941 F.2d at 1533.

Here, the ALJ explicitly stated in her opinion that the claimant did not "have an impairment or *combination* of impairments that meets or medically equals one of the listed impairments in [Appendix 1]." (R. 413) (emphasis added). The ALJ also explicitly opined that she had considered "*all* symptoms" in making her decision that the claimant was not disabled. (R. 414) (emphasis added). When the ALJ posed various hypotheticals to the vocational expert during the determination hearing, she specifically included the claimant's mental limitations in considering the claimant's residual functional capacity. Specifically, the ALJ referred to the claimant's "crying spells, and the memory loss of a mild to moderate nature, ADHD, does unsocial inappropriate things like [INAUDIBLE], excessive [sic] compulsive disorder. . . " (R.

48). The vocational expert stated that if the claimant was "not able to sustain concentration for at least two [INAUDIBLE] periods," jobs would still be available. (R. 48-49). In addition, the ALJ specifically included the claimant's "problems with concentration and memory" and her obsession with collecting things in finding that the claimant had the residual functional capacity to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). (R. 413-14).

The Eleventh Circuit held that "A reference to the claimant's 'combination of impairments' is adequate to demonstrate that the ALJ considered the cumulative effect of the claimant's impairments." *Coleman ex rel. J.K.C. v. Comm'r of Soc. Sec.*, 454 F. App'x 751, 753 (11th Cir. 2011) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002)). Here, the ALJ included the claimant's mental limitations in her questioning of the vocational expert and in her opinion on the claimant's residual functional capacity. This is sufficient to illustrate that the ALJ fully considered the combination of the claimant's physical *and* mental impairments in her decision. The claimant has failed to demonstrate that the ALJ erred in failing to consider the combination of the claimant's impairments in her decision.

## VII. CONCLUSION

The ALJ's classification of the claimant's mental impairments as not severe is harmless error because the ALJ considered those impairments, as well as claimant's physical limitations, in deciding that the claimant was not disabled. The ALJ explicitly stated that she properly considered all of the claimant's impairments in combination, and thus, committed no reversible error.  For these reasons as more fully stated above, the Commissioner's decision is supported by substantial evidence and the Commissioner applied the correct legal standards.  The court AFFIRMS the Commissioner's decision.

DONE and ORDERED this 4th day of February, 2013.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE